# Mullins v. Commonwealth.

March 25, 1941.

W. L. Hammond and D. M. Bingham for appellant.

Hubert Meredith, Attorney General, and Joe B. Williams for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

Harrison Mullins has been convicted of the crime of maliciously shooting and wounding another with intent to kill, a crime defined by Section 1166 of the Kentucky Statutes, and sentenced to a term of 21 years in the state penitentiary. He seeks a reversal of the judgment because: (1) He was tried by illegal and incompetent jurors; (2) the verdict is not supported by the evidence; (3) the court failed to give the whole law of the case; and (4) the punishment is excessive.

In his motion and grounds for a new trial, the accused stated that Bob Collett, one of the jurors, had expressed an opinion as to the defendant's guilt prior to the trial, and that Harvey Little, another juror, "had been convicted to the Federal penitentiary and had not been reinstated, and was serving under probation at the time that he served on the jury that tried the defendant." In support of the motion and grounds for a new trial, the affidavit of Ed Shackelford was filed. Shackelford was a member of the regular panel, but was not a member of the jury that tried the defendant. He stated in his affidavit that Bob Collett had said in his presence prior to the trial that the defendant "had a bad case." The Commonwealth filed the affidavit of Collett in which he denied making the statement attributed to him by Shackelford, or any part thereof. Under the circumstances, the court properly overruled the motion for a new trial based on this ground. Proof of bias by a juror must show that it existed at the time of the trial, and it must be established by clear and convincing proof. Where the proof is conflicting, the matter rests largely in the discretion of the trial judge. Cottrell v. Commonwealth, 271 Ky. 52, 111 S. W. (2d) 445; Combs v. Commonwealth, 255 Ky. 513, 75 S. W. (2d) 7; Curtis v. Commonwealth, 237 Ky. 215, 35 S. W. (2d) 331. Likewise, the motion for a new trial based on the alleged incompetency of the juror Harvey Little was properly overruled. Section 2253 of the Kentucky Statutes, in force when this case was tried, though later amended by Chapter 102, Acts 1940, prescribed the qualifications of jurymen, but concluded:

"The fact that a person not competent served on a jury shall not be cause for setting the verdict aside, nor shall exceptions be taken to any juror for such cause after the jury has been sworn."

It appears from the verified motion and grounds for

a new trial that Little had been convicted of some offense in a federal court. It has been held that, in the absence of an express statutory declaration to that effect, a person is not made incompetent as a juror by conviction and sentence in a court of another jurisdiction. Queenan v. Territory, 11 Okl. 261, 71 P. 218, 61 L. R. A. 324, affirmed in 190 U. S. 548, 23 S. Ct. 762, 47 L. Ed. 1175. It has also been held that a person convicted of an offense in another state is not disqualified to serve as a juror where such offense is not a felony in the state in which he is called to serve as a juror. Browning v. State, 120 Ohio St. 62, 165 N. E. 566. But, in any event, disqualification of a juror on the ground of a prior conviction of a felony, though a ground for challenge, is not sufficient, in view of our statute prescribing the qualifications of jurors, to warrant a setting aside of the verdict where such ground of challenge was not made when the jury was impaneled, and certainly so when it is not shown that appellant did not then know of such disqualification. Like any other disqualification, it may be waived. Wyatt v. Commonwealth, 255 Ky. 454, 74 S. W. (2d) 928; Horton v. Commonwealth, 254 Ky. 443, 71 S. W. (2d) 984; Combs v. Commonwealth, 97 Ky. 24, 29 S. W. 734; City of Dayton v. Lory, 169 Ky. 94, 183 S. W. 252; Strang v. United States, 5 Cir., 45 F. (2d) 1006; Turley v. State 74 Neb. 471, 104 N. W. 934.

Appellant's claim that the verdict is not supported by the evidence requires a brief statement of the facts. Appellant was accused of shooting and wounding William Patterson, a policeman of the city of Pineville, in the Bell Cafe in Pineville on the evening of December 26, 1940. He first appeared at the cafe between 6 and 7 o'clock. He was under the influence of liquor, and created considerable disorder by flourishing a pistol and pointing it at a group of boys. Helen Bingham, a waitress in the cafe, obtained possession of the pistol and kept it until appellant left, when it was returned to him. He returned to the cafe between 8 and 9 o'clock, and seated himself in a booth located on the right of the entrance. The cafe was a small room with a counter on the left of the entrance and a row of four booths on the right. A door in the rear led to a dance hall. Appellant ordered a glass of beer, and while he was drinking it he accused Julia Slusher, owner of the cafe, of calling an officer. She denied that she had called an officer, and

started toward the booth where appellant was sitting, whereupon he drew his pistol, pointed it at her, and ordered her to stop. She turned, went into the dance hall, and sent an employee for the police. Appellant said to Helen Bingham that he knew Mrs. Slusher had sent for the officers, and if they came after him "he would get them or they would get him, he would not let them take him in." He pointed the pistol at Helen Bingham, who was sitting on a stool at the counter, and told her to remain seated. Within a few minutes three policemen, William Patterson, Hays Page, and Bob Shell arrived, and when Patterson opened the door and entered the cafe appellant began shooting at him. Helen Bingham ran out of the room after the first shot. Patterson was shot in the left arm. The bullet entered his arm about four inches below the elbow, shattered the elbow, and lodged in the upper part of his arm. The place of entry and direction taken by the bullet are explained by the fact that Paterson raised his left arm as appellant shot. Patterson testified in part as follows:

"Q. After he shot the first shot what effect did that have on you? A. It staggered me back, my arm fell down, and he still tried to get the gun against my heart this way (indicating). I could not get my gun, I was trying to keep that gun off my heart. I made a spring and got him by the shoulder, the coat sleeve. We were turned around this way and I was watching the hammer of the gun and the hammer would go back and start to shoot and I would jerk his arm to the right. He shot four holes right through here, over my heart almost, grazing the hide. (indicating) * * *

"Q. Now, what happened after he shot through your coat there and broke your arm, and shot over your chest and missed your body? A. I scuffled with him for some little time, I could not say just how long, and Hays Page run in and knocked the gun out of his hand with his gun and took him to jail."

Hays Page had not entered the cafe when the shooting began, and he fired one shot through the glass door while Patterson and appellant were scuffling. Appellant advances the theory that Patterson was wounded by the bullet fired by Page, but all the proof shows that he had been wounded before Page fired his pistol. Appellant

claimed that Patterson, upon entering the cafe, began shooting at him and that he shot at Patterson in self-defense. The proof for the Commonwealth shows that Patterson never drew his pistol. There was an abundance of evidence to sustain the verdict.

The court instructed the jury under Section 1166 of the Kentucky Statutes, and also on shooting and wounding another in sudden affray or in sudden heat and passion and without malice, a misdemeanor defined by Section 1242, Kentucky Statutes, and a degree of the offense charged in the indictment. Appellant complains because the court failed to instruct on the other misdemeanor defined by Section 1242, to wit, shooting at another without wounding in sudden affray or in sudden heat and passion and without malice. The punishment for each of the misdemeanors defined by Section 1242 is a fine of not less than $50 nor more than $500, or confinement in the county jail for not less than six months nor more than one year, or both. As heretofore stated there was no evidence from which it could reasonably be inferred that any person other than appellant shot and wounded William Patterson. In any event, no prejudice to appellant's rights resulted. The jury were given an opportunity to find him guilty of a misdemeanor, and instead found him guilty of the felony charged and gave him the highest penalty for that crime, thus showing that no doubt existed in their minds as to who fired the shot that wounded Patterson.

We find no merit in appellant's claim that the punishment is excessive. He made a murderous assault on an officer and if the wound had proved fatal he doubtless would have been sentenced to life imprisonment or death, and justly so.

The judgment is affirmed.